*Exhibit*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA  05 - 6 4 9 1 M - 01 - 2

UNITED STATES OF AMERICA    :     **Crim. No. P-546997**

     v.      :     **Mag. Judge Alan Kay**

     :    **FILED**

ELLEN E. BARFIELD, et al.,    :     **Trial: November 16, 2005**

    NOV 10 2005

    **Defendants.**    :

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**FILED**

NOV 09 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## GOVERNMENT'S MOTION *IN LIMINE*
## TO PRECLUDE AN AFFIRMATIVE DEFENSE OF NECESSITY

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits its Motion *In Limine* to preclude any attempt by

the defendants to assert – either directly or indirectly – an affirmative defense of necessity at trial

in this case. If the defendants do intend to present such a defense, the government requests that

the defendants first be required to offer proof so that the Court may make a pre-trial

determination of whether such proof is sufficient to prove the essential elements of the defense as

established by the applicable law, described herein. If the defendants do not intend to present

such a defense, or if the Court determines there is no basis to assert it, then the government

submits they should be precluded from in any way invoking such a defense through argument, or

by cross examination of the government's witnesses, or in direct testimony of their own

witnesses or the defendants themselves.

### BACKGROUND

On September 26, 2005, the defendants participated in a demonstration that culminated

on the White House Sidewalk, a park area administered by the National Park Service, located in

the 1600 block of Pennsylvania Avenue, NW, Washington, DC, north of the White House

complex property. The organizer of the demonstration had applied for and had been issued a permit by the National Park Service for demonstrations on the Ellipse and in Laffayette Park. The organizers specifically did not seek a permit for demonstrations on the White House Sidewalk.

On three occasions, shortly before 1:40 p.m. on September 26, 2005, members of the United States Park Police gave audible warnings to the defendants (and others) that they were in violation of the regulations applicable to the area (the White House Sidewalk), which do not allow demonstrations without a permit in that location. They were instructed in each of the three warnings to leave the area or be subject to arrest. From approximately 1:40 p.m. forward, members of the Park Police observed each of the defendants on the White House Sidewalk and placed them under arrest for violating 36 C.F.R. § 7.96(g)(2) (Demonstrating Without a Permit). Each defendant was issued a Violation Notice and released after processing. Each defendant was permitted by the Violation Notice to pay a $50 fine (plus $25 processing fee) in satisfaction of the offense, or to plead not guilty and promise to appear in court.

Although the defendants have not indicated what their theory of defense at trial may be, the government submits that they may attempt to claim that their actions were justified by the political situation of service members fighting the war in Iraq. In other words, they may claim that they should not be held criminally liable for action necessitated by critical political circumstances. Such a claim would constitute a necessity defense – and, in particular, a defense of *political* necessity. The government does not dispute that the defendants strongly opposed the war in Iraq. However, the government will strongly object to any attempt by the defendants to advance an argument that violating the closure and public use limits regulations was a <u>necessary</u>

2

and justified means to gain the world's attention to the "plight" of those fighting the war in Iraq

and to force the United States government to address the political issue of terminating the war in

Iraq. As explained below, such evidence and argument do not constitute a valid legal defense to

the charged conduct and should not be permitted as such. Moreover, to the extent such evidence

or argument may be presented as a effort to nullify a verdict, it is improper and should be

precluded.

## LAW: THE AFFIRMATIVE DEFENSE OF NECESSITY

At common law,

> duress was said to excuse criminal conduct where the actor was under a lawful
> threat of imminent death or serious bodily injury, which threat caused the actor
> to engage in conduct violating the literal terms of the criminal law. While the
> defense of duress covered the situation where the coercion had its source in the
> actions of other human beings, the defense of necessity, or choice of evils,
> traditionally covered the situation where physical beyond the actor's control
> rendered illegal conduct the lesser of two evils.

United States v. Bailey, 444 U.S. 394, 409-10 (1980). "The theory of necessity is that the

defendant's free will was properly exercised to achieve the greater good and not that his free will

was overcome by an outside force as with duress." United States v. Contento-Pachon, 723 F.2d

691, 695 (9th Cir. 1984). The defense of necessity is often invoked when the defendant maintains

that he acted in the interest of the general welfare; where that interest is political in nature, the

defense may be referred to as one of *political* necessity.

But while "[m]odern cases have tended to blur the distinction between duress and

necessity . . . . [u]nder any definition of these defenses one principle remains constant: *if there*

*was a reasonable legal alternative to violating the law, 'a chance both to refuse to do the*

*criminal act and also to avoid the threatened harm,' the defenses will fail.*" Bailey, 444 U.S. at

3

410 (emphasis added). Thus, a defendant is not entitled to claim such a defense unless and until he demonstrates that his commission of the charged crime was his only reasonable alternative under the circumstances. Id.

In order to assess whether there is sufficient evidence to satisfy that precondition is met, the Court may require the defendant to submit a pre-trial offer of proof regarding any necessity defense he may intend to rely upon at trial. Bailey, 444 U.S. at 412-15 & n.9. See also United States v. Montgomery, 772 F.2d 733, 736 (11th Cir. 1985); United States v. Dorell, 758 F.2d 427, 430 (9th Cir. 1985); United States v. Seward, 687 F.2d 1270, 1273 (10th Cir. 1982); United States v. Brodhead, 714 F. Supp. 593, 596 (D. Mass. 1989). Where the evidence, even if believed, does not establish all of the elements of a defense, the trial judge need not submit the defense to the jury. Bailey, 444 U.S. at 415; United States v. Bifield, 702 F.2d 342, 346 (2d Cir.), cert. denied, 461 U.S. 931 (1983). The showing required is a stringent one. The defendant must show that he acted to prevent "an imminent harm which no available options could similarly prevent." United States v. May, 622 F.2d 1000, 1008 (9th Cir.), cert. denied, 449 U.S. 984 (1980); United States v. Quilty, 741 F.2d 1031, 1033-34 (7th Cir. 1984); United States v. Cassidy, 616 F.2d 101 (4th Cir. 1979).[1] In effect,

> [t]he defense of necessity . . . is . . . based on a real emergency. It
> can be asserted only by a defendant who was confronted with such
> a crisis as a personal danger, a crisis which did not permit a selection
> from among several solutions, some of which did not involve criminal

---

[1] Similarly, in a non-political context, the Second Circuit held in unpublished opinion that an HIV-positive alien previously convicted of narcotics offenses, who was prosecuted for reentered the United States illegally and claimed he reentered to obtain medical services, was properly precluded from asserting a necessity defense because "there were lawful alternatives available to him other than entering the United States illegally." United States v. Crown, 12 Fed. Appx. 58 (2d Cir. (N.Y.) 2001).

4

acts. It is obviously not a defense to charges arising from a typical protest.

Seward, 687 F.2d at 1276; see also United States v. The Diana, 74 U.S. (7 Wall.) 354, 360-61 (1868). Available alternatives to criminal activity "may not prove sufficiently persuasive to lead to implementation of" the defendant's goals, but "success is not the measure" of whether such alternatives to criminal conduct are, in fact, available. Brodhead, 714 F. Supp. at 597. Moreover, a defendant's motivation is not a legal defense or justification for committing a criminal offense. See United States v. Kroncke, 459 F.2d 697 (8th Cir. 1972).

Courts have considered -- and consistently rejected -- a necessity defense where defendants unlawfully entered a military base and damaged government property to protest nuclear weapons, nuclear war, or nuclear power. See United States v. Kabat, 797 F.2d 580 (8th Cir. 1986); Montgomery, 772 F.2d at 736; Dorell, 758 F.2d 434; Quilty, 741 F.2d at 1034; Seward, 687 F.2d at 1276; Brodhead, 714 F. Supp. at 597. The defense has likewise been rejected where defendants destroyed selective service records purportedly to end the Vietnam war. United States v. Simpson, 460 F.2d at 515, 518 (9th Cir. 1972); Kroncke, 459 F.2d at 704 (casting the defense as a "justification"). In all these cases, the courts found there lacked a sufficient causal relationship between the criminal act committed and avoidance of the asserted "greater harm." See, e.g., Kroncke, 459 F.2d at 701 (connection between the destruction of the documents and ending the war was too "tenuous and uncertain."); Simpson, 460 F.2d at 518 (Vietnam War would have continued whether or not the local draft board could restore its files); Dorrell, 758 F.2d at 433 (defendant "failed as a matter of law to establish" that his illegal entry onto an Air Force base and his spray-painting of government property "could be reasonably

5

anticipated to lead to the termination of the MX missile program and the aversion of nuclear war
. . . ."). In short, each defendant was simply unable to establish that "he reasonably anticipated
the existence of a direct causal relationship between his conduct and the harm to be averted."
Dorrell, 758 F.2d at 431; accord Cassidy, 616 F.2d at 102.

ARGUMENT

In this case, the defendants cannot establish, as a matter of law, the requisite elements of
the affirmative defense of necessity, because they cannot show that their participation a
demonstration on the White House Sidewalk without a permit was compelled by a "real
emergency" or that the defendants faced an imminent "threatened harm" that made those criminal
acts the only available alternative to a greater evil.  The war in Iraq had been in progress for a
number of months at the time of the offense, and there were no particularly distinctive critical
circumstances in play on September 29, 2005, when the defendants unlawfully demonstrated on
the White House Sidewalk without a permit issued by the National Park Service.

Moreover, the defendants cannot show that they could not have chosen legal alternatives
to the crime of demonstrating without a permit to further the stated goal of pressing for an end to
the war in Iraq. They could have pursued publicity about the asserted plight of service members
in Iraq to the media both within the United States and Iraq, indeed, worldwide.  They could have
met with human rights organizations, religious groups, expatriates having political connections
or influence in other countries, the United Nations, and regional meetings of Middle Eastern and
American Hemisphere countries.  They could have urged their message with the governing
authorities in Washington, DC, working within the Federal government structure, for example,
their Representatives and Senators in Congress.  They could have organized their followers and

6

other sympathizers to continue to engage in a campaign of peaceful protest (such as picketing or distribution of written material) or rallies to make the public aware of the needs of service members in Iraq and urge political pressure to be brought on the United States government. They could have presented his views to representatives of interested governments, such as the United States and Iraq, at their diplomatic missions in Iraq, Europe and elsewhere. The defendants could have pursued these opportunities to propagate the ostensibly legitimate message of the demonstration in peaceful protest against the Iraq war and a memorial for those killed in it, but instead they unlawfully violated a regulation prohibiting demonstrations without a permit in order specifically to be arrested. See Quilty, 741 F.2d at 1033-34.

The defendants cannot claim that "necessity" was created because they and their group were impatient with "less visible and more time-consuming alternatives" to crossing a police barrier. Dorrell, 758 F.2d at 431; accord Kabat, 797 F.2d at 591 (8th Cir. 1986). Nor can they manufacture a "necessity" defense by maintaining that some alternative efforts had not yet succeeded. Brodhead, 714 F. Supp. at 597. As the Eleventh Circuit observed, "[p]eople are not legally justified in committing crimes simply because their message goes unheeded." Montgomery, 772 F.2d at 736.

Furthermore, the defendants cannot establish, as a matter of law, that their involvement in demonstrating without a permit could reasonably be anticipated to lead to the end of hostilities in Iraq. The only goal that the defendants could reasonably have expected to accomplish in demonstrating without a permit would be to compel the police to arrest them. That this goal was in fact accomplished does not create a necessity defense for the defendants; it merely establishes that the unlawful actions taken by the defendants were addressed by their arrests.

7

Finally, the defendants' sincerity and commitment to their cause – even assuming they are genuine – are not relevant to this analysis. The law clearly delimits the applicability of a necessity defense, and even if these defendants were to have been honestly motivated by a laudable cause, their commission of the crime of demonstrating without a permit is not justified under the law.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the government respectfully requests that the Court grant this motion and issue an order precluding the defendants from attempting to assert an affirmative defense of necessity in this case unless and until they presents sufficient evidence establishing all the elements of such a defense.   A proposed Order is submitted herewith.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By:

Catharine A. Hartzenbusch
Assistant United States Attorney
Bar No. 450-194
Federal Major Crimes Section
555 4th Street, N.W., Room 4223
Washington, D.C.  20530
202/353-8822
Catharine.Hartzenbusch@usdoj.gov